UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RODNEY K. MEISEL,          )
                                )
        Plaintiff,         )
                                )        CIVIL ACTION NO.
VS.                       )
                                )        3:11-CV-0080-G
USA SHADE AND FABRIC       )
STRUCTURES INC., ET AL.,      )
                                )
        Defendants.       )

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the plaintiff, Rodney K. Meisel ("Meisel"), to

remand this case to the state court from which it was previously removed and to

recover costs and attorney's fees incurred as a result of removal (docket entry 7). For

the reasons set forth below, the plaintiff's motion to remand is granted, but his

motion for attorney's fees is denied.

## I. BACKGROUND

### A. Factual Background

Meisel brings this action against USA Shade and Fabric Structures Inc.

("Shade"), U.S. Bank, N.A. ("Bank"), Jeff Sarembock ("Sarembock"), and Adam

Auten ("Auten") for libel, slander, and defamation caused by false and defamatory

statements and republications that the defendants "made intentionally and/or with

conscious indifference to the rights and welfare of the Plaintiff." *See generally* Plaintiff's First Amended Petition ("Amended Petition") ¶¶ 5.0-7.01, *attached to* Defendant U.S. Bank, N.A.'s Notice of Removal ("Removal") *as* Exhibit A-25 (docket entry 1).

Meisel filed his original petition in state court on July 6, 2010, Plaintiff's Original Petition and Application for Temporary Restraining Order and Preliminary Injunction ("Original Petition"), *attached to* Removal as Exhibit A-2, and later amended his petition on November 29, 2010. Amended Petition. The parties engaged in extensive discovery in state court, where the case was set to begin trial in July. Plaintiff Rodney K. Meisel's Motion for Remand, Request for Expedited Briefing Schedule, and Brief in Support ("Motion") at 14 (docket entry 7).

Bank removed this case to federal court of the basis of federal-question jurisdiction, arguing that Meisel's claims are completely preempted by the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"), because "the FCRA specifically preempts state defamation actions against persons who furnish information to consumer reporting agencies, unless false information was reported with malice or willful intent to injure the consumer," because Meisel's claims are based on Bank's conduct as a furnisher[1] -- "allegedly republishing 'false and defamatory statements to

---

[1]     "A furnisher is an entity which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies." *Elias v. Chase Bank USA, N.A.*, No. 2:09cv250-KS-MTP, 2010 WL 384527, at *3 (S.D.
(continued...)

ChexSystems, Inc., a consumer reporting agency," -- and because Bank "did not report that information to ChexSystems, Inc. with malice or willful intent to injure Meisel." Removal at 2-3 ¶ 5. Bank contends that it removed this case to federal court outside of the statutory 30-day limit because "[i]t was only through discovery that U.S. Bank was able to uncover the true nature and scope of the allegations . . . [because] Plaintiff subsequently identified the 'statements' as 'reporting,' and the totality of his discovery responses and document production revealed that the alleged defamatory statements by U.S. Bank consisted exclusively of a U.S. Bank report to the consumer reporting agency ChexSystems. . . ." Defendant U.S. Bank, N.A.'s Response in Opposition to Plaintiff's Motion to Remand ("Response") at 1. Meisel contests Bank's purported basis for removal and moves to remand. *See generally* Motion.

## B. <u>Procedural Background</u>

Title 28, Section 1441(a) of the United States Code permits the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. 1441(a). The statute allows a defendant to "remove a state court action to federal court only if the action could have originally been filed in federal court." *Anderson v. American Airlines, Inc.*, 2 F.3d 590, 593 (5th Cir. 1993). Because "removal jurisdiction raises significant federalism concerns,"

---

[1](...continued)
Miss. Jan 27, 2010) (internal quotations omitted).

however, the statute must be strictly construed. *Willy v. Coastal Corporation*, 855 F.2d 1160, 1164 (5th Cir. 1988); see also *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008). Therefore, "any doubts concerning removal must be resolved against removal and in favor of remanding the case back to state court." *Cross v. Bankers Multiple Line Insurance Company*, 810 F. Supp. 748, 750 (N.D. Tex. 1992) (Means, J.); see also *Shamrock Oil & Gas Corporation v. Sheets*, 313 U.S. 100, 108-09 (1941). The party seeking removal bears the burden of establishing federal jurisdiction. *Willy*, 855 F.2d at 1164.

District courts have original jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331; *Frank v. Bear Stearns & Company*, 128 F.3d 919, 922 (5th Cir. 1997). In determining whether a claim arises under federal law, the well-pleaded complaint rule allows a plaintiff to be the "master to decide what law he will rely upon" in pursuing his claims. *The Fair v. Kohler Die & Specialty Company*, 228 U.S. 22, 25 (1913); see also *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6 (2003); *Aaron v. National Union Fire Insurance Company of Pittsburg, Pa.*, 876 F.2d 1157, 1160-61 (5th Cir. 1989), *cert. denied*, 493 U.S. 1074 (1990). Where potential remedies exist under both state and federal law, a plaintiff may choose to proceed only under state law and avoid federal court jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Carpenter v. Wichita Falls Independent School District*, 44 F.3d 362, 366 (5th Cir. 1995). "There is an exception

to the well-pleaded complaint rule, though, if Congress 'so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003) (en banc) (quoting *Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 63-64 (1987)), *cert. denied*, 540 U.S. 1104 (2004). This narrow exception -- the artful pleading doctrine -- permits the court to look beyond the face of the plaintiff's complaint to determine if federal law "so forcibly and completely displace[s] state law that the plaintiff's cause of action is either wholly federal or nothing at all." *Carpenter*, 44 F.3d at 366-67. The artful pleading doctrine, however, is inapposite unless a defendant carries its burden of showing complete preemption. See *id.* at 367; see also *Saia v. Universal Card Services Corporation*, No. Civ.A.00-1295, 2000 WL 863979, at *2 (E.D. La. June 27, 2000).

"Complete preemption, which creates federal removal jurisdiction, differs from more common 'ordinary preemption' (also known as 'conflict preemption'), which does not." *Johnson v. Baylor University*, 214 F.3d 630, 632 (5th Cir.), *cert. denied*, 531 U.S. 1012 (2000). "Ordinary," or "conflict," preemption "arises when a federal law conflicts with state law, thus providing a federal defense to a state law claim, but does not completely preempt the field of state law so as to transform a state law claim into a federal claim." *Arana*, 338 F.3d at 439. In order to establish complete preemption, a defendant must show that: (1) the statute contains a civil enforcement provision

that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is clear Congressional intent that the federal action be exclusive. *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008) (citing *Anderson*, 539 U.S. at 11).

## II. ANALYSIS

Meisel asserts three independent bases for remand. First, he argues that his state common law causes of action are not completely preempted by the FCRA because "[d]efamatory statements made maliciously and with the intent to injur[e] the Plaintiff are specifically excepted from the FCRA." Motion at 13. Second, Meisel contends that, even if the FCRA does completely preempt his claims, Bank's removal of this case to federal court was untimely. *Id.* at 5-8. Finally, according to Meisel, Bank waived its right to remove by asserting a voluntary cross-claim after it became aware that this case was removable. *Id.* at 8-9; Plaintiff Rodney K. Meisel's Reply in Support of Motion to Remand and Brief in Support ("Reply") at 5 ("US Bank filed its cross claim on January 10, 2010, eighteen days *after* it claims the case became removable by virtue of Meisel's discovery responses of December 23, 2010.").

For the reasons that follow, the court finds that Meisel's claims are not completely preempted by the FCRA and the court lacks federal-question jurisdiction. Additionally, even it is assumed for the sake of argument that the FCRA does

completely preempt Meisel's claims, remand of this case is proper because Bank's removal from state court was untimely. Because remand is appropriate on either of these alternate grounds, the court need not address Meisel's final contention that Bank waived its right to remove by filing a counterclaim in state court.

### A. FCRA Preemption

It is undisputed that the FRCA (1) contains a civil enforcement provision, and (2) specifically grants jurisdiction to the federal courts for enforcement. 15 U.S.C. § 1681p; see also *Fiume Industries, Inc. v. American Express Travel Related Services Company, Inc.*, No. 4:09-cv-591, 2009 WL 4667542, at * 3 (S.D. Tex. Dec. 1, 2009). To resolve the complete preemption question, therefore, the court must consider whether Congress intended the federal action to be exclusive.

The FCRA contains two preemption provisions that are relevant to this case: section 1681h(e), which provides qualified immunity to furnishers of credit information, and section 1681t(b), which outlines more absolute immunity from certain types of state law claims. See *Diprinzio v. MBNA America Bank, N.A.*, No. 04-872, 2005 WL 2039175, at *3 (E.D. Pa. Aug. 24, 2005). The former predates the latter, and prior to 1996, FRCA preemption of state law claims was governed only by section 1681h(e). Section 1681h(e) states:

> Except as provided in sections 1681n and 1681*o* of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any

> consumer reporting agency, any user of information, or any
> person who furnishes information to a consumer reporting
> agency, based on information disclosed pursuant to section
> 1681g, 1681h, or 1681m of this title, or based on
> information disclosed by a user of a consumer report to or
> for a consumer against whom the user has taken adverse
> action, based in whole or in part on the report except as to
> false information furnished with malice or willful intent to
> injure such consumer.

15 U.S.C. § 1681h(e). In 1996, however, Congress added section 1681t(b) to the

FCRA through enactment of the Consumer Credit Reporting Reform Act of 1996.

*Baker v. General Electric Capital, Corporation*, No. 3:10-CV-62 (CAR), 2011 WL

1743610, at *2 (M.D. Ga. May 6, 2011). Section 1681t(b)(1)(F), the subsection

relevant to this case, provides:

> No requirement or prohibition may be imposed under the
> laws of any State --
>
>> (1) with respect to any subject matter
>> regulated under --
>
> * * *
>
>> (F) section 1681s-2 of this title, relating to the
>> responsibilities of persons who furnish information to
>> consumer reporting agencies, except that this paragraph
>> shall not apply [to specified provisions of the
>> Massachusetts Annotated Laws or the California Civil
>> Code].

15 U.S.C. § 1681t(b)(1)(F). "Although § 1681t(b)(1)(F) appears to preempt all state

law claims based on a [furnisher's] responsibilities under § 1681s-2, § 1681h(e)

suggests that defamation claims can proceed against [furnishers] as long as the

plaintiff alleges falsity and malice." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1166 (9th Cir. 2009), *cert. denied*, *FIA Card Services, N.A. v. Gorman*, __ U.S. __, 131 S.Ct. 71 (2010).

### 1. *The Scope of Section 1681h(e)*

The plain language of section 1681h(e) expressly preempts all non-FCRA actions in the nature of defamation against "any person who furnishes information to a consumer reporting agency ["CRA"]. . . except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e). The Fifth Circuit has consistently held that section 1681h(e) does not preempt those state law causes of action against furnishers that are premised on the furnishment of false information with malice.[2] *E.g.*, *Young v. Equifax Credit Information Services, Inc.*, 294

---

[2]    Notably, every circuit court to address the issue has reached the same conclusion:  section 1681h(e) preempts only those state law tort claims that are not alleged or proved to be a product of malice or willful intent to injure.  See, *e.g.*, *Ross v. Federal Deposit Insurance Company*, 625 F.3d 808, 817 (4th Cir. 2010) ("[N]arrowly interpreted, the § 1681h(e) exception authorizes state lawsuits only for conduct that is truly malicious and not simply careless."), *pet. for cert. filed* (Feb. 28, 2011); *Lofton-Taylor v. Verizon Wireless*, 262 F. App'x 999, 1002 (11th Cir.) ("[T]he company furnishing the information is protected from state law defamation and invasion of privacy claims unless the information it provided was both false and also given with the malicious or willful intent to damage the consumer."), *cert. denied*, __ U.S. __, 129 S.Ct. 493 (2008); *Nwoke v. Countrywide Home Loans, Inc.*, 251 F. App'x 363, 365 (7th Cir. 2007) ("[T]he Fair Credit Reporting Act (FCRA) preempts state-law negligence claims for providing inaccurate information to credit-reporting agencies. . . .  And to succeed on an FCRA claim, a plaintiff must establish that the defendant acted maliciously or willfully intended to injure the plaintiff."); *Cushman v. Trans Union Corporation*, 115 F.3d 220, 229 (3d Cir. 1997) (remanding "for a determination of whether [the plaintiff] has produced evidence of 'malice or willful intent to injure'
(continued...)

F.3d 631, 638 (5th Cir. 2002); *Morris v. Equifax Information Services, LLC*, 457 F.3d 460, 471-72 (5th Cir. 2006).

In *Young*, the Fifth Circuit affirmed an award of summary judgment in favor of the defendant on the plaintiff's state law tort claims because the plaintiff failed to provide any evidence supporting an inference that the defendant "reported information with malice or willful intent toward him." *Young*, 294 F.3d at 638. The plaintiff there, James Young, sued the defendants for injuring him by publishing defamatory credit information about a J.C. Penney ("Penney") charge account that another person fraudulently opened in his name. *Id.* at 632. The court agreed that "[t]he FCRA preempts state law defamation or negligent reporting claims *unless* the plaintiff consumer proves 'malice or willful intent to injure' him," but nevertheless affirmed summary judgment because Young failed to produce "competent evidence of malice" or competent evidence that Penney republished the account information after the parties' initial settlement. *Id.* at 638 (emphasis added).

---

[2](...continued)
sufficient to avoid preemption of her defamation claim pursuant to § 1681h(e)."); *Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir.) ("[N]o defamation or like actions are allowed under the Act unless malice or willful intent is alleged, . . . or proved."), *cert. denied*, 449 U.S. 835 (1980); see also *Gorman*, 584 F.3d at 1168 ("Even if Gorman's libel claim is not preempted by § 1681t(b)(1)(F), it is still subject to § 1681h(e), and so he must prove, in addition to the common law elements of libel, that the information was "false" and "furnished with malice or willful intent to injure.").

Similarly, in *Morris*, the Fifth Circuit affirmed summary judgment in favor of the defendant on the plaintiff's Texas libel claim where the plaintiff presented no evidence that the defendant acted with malice. *Morris*, 457 F.3d at 471-72. The court first examined the nature of the plaintiff's libel claim, finding that Texas' libel law, similar to the FCRA, privileges the communication of information from furnishers to CRAs "when it is made without *actual malice.*" *Id.* at 471 (emphasis original). Next, the court applied the standard articulated by the Supreme Court in *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964), to delineate the "'malice' exception to preemption under section 1681h(e)." *Morris*, 457 F.3d at 471. Finally, finding that the plaintiff failed to present any evidence that the defendant published false statements about him "knowing the statements were false or with a reckless disregard of whether they were false," the Fifth Circuit concluded that the plaintiff's claim failed "under both section 1681h(e) and the conditional privilege under Texas law." *Id.* at 471-72.

*Young* and *Morris* are instructive. Those cases suggest that the Fifth Circuit continues to recognize the independent force of section 1681h(e), and the exception to preemption provided therein, notwithstanding the broader preemption provision of section 1681t(b)(1)(F). Additionally, *Young* and *Morris* give meaning to the term "malice," as used in the FCRA, and help define the contours of competent evidence that a plaintiff must produce to withstand summary judgment on state law tort claims

against a furnisher.  As the present case is not at the summary judgment stage, but rather on a motion to remand, the court need only look to the face of the plaintiff's amended petition to ascertain whether he has alleged malice -- an allegation that would except his claims from preemption by section 1681h(e) of the FCRA.

Meisel's amended petition specifically alleges that "US Bank has republished this [defamatory] information despite actual knowledge that the statements it was making were false," Amended Petition ¶ 4.10, and the "Defendants were aware that the statements published about the Plaintiff were false at the time the publication occurred and that such statements and publications were made intentionally and/or with conscious indifference to the rights and welfare of the Plaintiff."  *Id.* ¶ 7.01. Additionally, Meisel alleges that both he and "USA Shade" made multiple efforts "to communicate to US Bank and others that the report of fraudulent activity was false. . . ."  *Id.* ¶ 4.11.  These facts, if true, would be sufficient to support a finding of malice.  See *Morris*, 457 F.3d at 471 & n.19 ("Under the *New York Times* standard, a statement has been made with 'actual malice' if it was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'").  Since the plaintiff alleges malice on the face of his amended petition, his state tort claims are not preempted by section 1681h(e) of the FCRA.[3]  The only question remaining,

_____

[3]    Bank argues that Meisel's amended petition fails to allege malice with particularity.  *See* Response at 6 ("Plaintiff did not allege that U.S. Bank, specifically, made defamatory statements with malice or willful intent to injure.").  But that is not

(continued...)

therefore, is whether section 1681t(b)(1)(F) completely preempts Meisel's claims, even though the allegation of malice saves those claims from preemption under section 1681h(e).

## 2. *The Effect of Section 1681t(b)(1)(F)*

Courts have divided on how to reconcile the broad preemption language of section 1681t(b)(1)(F) with the narrower language of section 1681h(e). Three predominant approaches have emerged in the case law: (1) the "total preemption" approach; (2) the "temporal" approach; and (3) the "statutory" approach. *Baker*, 2011 WL 1743610, at *3. Each raises a unique set of concerns, but the statutory approach provides the most logical and least practically-problematic means of harmonizing these two seemingly inconsistent provisions.

---

[3](...continued)
required given that Texas' "fair notice" pleading standard applies to the plaintiff's state-court pleadings. See *Tompkins v. Cyr*, 202 F.3d 770, 787 (5th Cir. 2000) ("[T]he federal rules do not apply to filings in state court, even if the case is later removed to federal court"). In Texas, "[t]hat an allegation be evidentiary or be of legal conclusion shall not be grounds for objection when fair notice to the opponent is given by the allegations as a whole." See TEX. R. CIV. P. 45(b) (Vernon 2003); see also *Horizon/CMS Healthcare Corporation v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000) (citing *Broom v. Brookshire Brothers, Inc.*, 923 S.W.2d 57, 60 (Tex. App.--Tyler 1995, writ denied)). Thus, the state-court petition's general allegation regarding the defendants' malice is sufficient to except the plaintiff's claims from preemption under section 1681h(e). See *Schlueter v. Carey*, 112 S.W.3d 164, 168 (Tex. App.--Fort Worth 2003, pet. denied) ("A court should uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged.").

The total preemption approach assumes that section 1681t(b)(1)(F) subsumes section 1681h(e) and preempts all state law claims against furnishers. *Id*.; *Jaramillo v. Experian Information Solutions, Inc.*, 155 F. Supp. 2d 356, 361-62 (E.D. Pa. 2001) ("While Congress did not specifically provide in the 1997 amendments that section 1681t supercedes 1681h, it is clear from the face of section 1681t(b)(1)(F) that Congress wanted to eliminate all state causes of action 'relating to the responsibilities of persons who furnish information to consumer reporting agencies. Any other interpretation would fly in the face of the plain meaning of the statute.'"). The problem, of course, is that this approach would render section 1681h(e) utterly meaningless (essentially repealed by implication), a mode of statutory construction long disfavored by the Supreme Court. See *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 190 (1978) ("In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." (quoting *Morton v. Mancari*, 417 U.S. 535, 550 (1974))); *Posadas v. National City Bank*, 296 U.S. 497, 503 (1936) ("[T]he intention of the legislature to repeal must be clear and manifest."). Adopting the "total preemption" approach would be tantamount to legislating from the bench, *Diprinzio*, 2005 WL 2039175, at *5 ("To presume that Congress wished to repeal an existing provision without clearly saying so would be an awkward act of lawmaking that this Court should not and shall not undertake."), because Congress amended section

1681h, but did not repeal section 1681h(e), when it enacted section 1681t(b)(1)(F) in 1996. *Baker*, 2011 WL 1743610, at *5 n.1 ("The Court further notes that when Congress enacted the preemption provision found in section 1681t(b) in 1996, it also amended portions of section 1681h, including augmenting the scope of section 1681h(e)."). Surely it is not within the province of this court to do what Congress had an opportunity, but elected not, to do. See *Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368, 1374 (N.D. Ga. 2004) ("[T]o imply Congress's intent to repeal a previously existing provision in the statute without a clear statement in the amendment to that effect is an unwieldy act of legislation that this court ought not and will not undertake."). For these reasons, the court refuses to read section 1681t(b)(1)(F) as completely subsuming section 1681h(e), and rejects the "total preemption" approach.

The second approach, the "temporal" approach, applies section 1681t(b)(1)(F)'s categorical bar only to those claims that arise after a furnisher receives notice of a dispute, and applies section 1681h(e) to those state law claims arising before notice. *Baker*, 2011 WL 1743610, at *3; *Aklagi v. Nationscredit Financial*, 196 F. Supp. 2d 1186, 1195 (D. Kan. 2002) ("[A]ny state law defamation claim predicated on EquiCredit furnishing inaccurate information to a consumer reporting agency *before* receiving notice of the Aklagis' dispute is *not* regulated under § 1681s-2. Therefore, it is *not* preempted by § 1681t(b)(1)(F).") (emphasis in

original).  This approach is plagued by a multitude of problems.  First, the "temporal"

approach does not square with the plain language of section 1681s-2(a) -- cross-

referenced by section 1681t(b)(1)(F) -- which unambiguously prevents the furnishing

of "any information relating to a consumer to any consumer reporting agency if the

person knows or has reasonable cause to believe that the information is inaccurate,"

irrespective of whether the furnisher has notice of a consumer dispute.  15 U.S.C.

§ 1681s-2(a)(1)(A); see also *Diprinzio*, 2005 WL 2039175, at *6 ("[Section] 1681s-

2(a)(1)(A) charges furnishers of information with a duty to report accurate

information *regardless of whether the furnisher has notice of the dispute*.'").  Moreover, the

plain language of section 1681s-2(a)(1)(B) indicates that "notice" of a consumer

dispute does not trigger a furnisher's duty to abstain from reporting inaccurate

information to CRAs; rather, the statutory text suggests knowledge of falsity sparks

that duty, not notice.  *See* 15 U.S.C. § 1681s-2(a)(1)(B) ("A person shall not furnish

information relating to a consumer to any consumer reporting agency if -- (i) the

person has been notified by the consumer . . . that specific information is inaccurate;

*and* (ii) the information is, in fact, inaccurate." (emphasis added)).  This is

particularly true in light of subsection (a)(1)(A).  See *Diprinzio*, 2005 WL 2039175,

at *6 .  Second, it seems odd that Congress would provide furnishers absolute

immunity for reporting false information *after* receiving notice of alleged inaccuracies,

but provide them only a limited, or qualified, immunity for reporting false

information without notice.  See *Citimortgage*, 351 F. Supp. 2d at 1374-75) ("It seems odd to this Court that Congress intended to protect furnishers of information more once they have knowledge that a consumer is disputing an item on his credit report; one would, logically, expect the opposite policy.").  Finally, adopting the "temporal approach" would require the court to delimit "notice" under the FCRA, decide whether notice sent or notice received controls, and determine how to treat claims based on conduct occurring both before and after such notice.  These unresolved issues, coupled with the plain language of the statute, caution against adopting the "temporal approach."  The court prefers not to wade into those murky waters.

The third approach -- the "statutory" approach -- construes section 1681t(b)(1)(F) narrowly to preempt only those claims arising under state statutory law, and recognizes section 1681h(e) as a federal defense to those state common-law claims not alleged, or proved, to be the product of malice or willful intent.  *Baker*, 2011 WL 1743610, at *3; *Carlson v. Trans Union LLC*, 259 F. Supp. 2d 517, 521 (N.D. Tex. 2003) (Sanders, J.) ("[Section] 1681h(e) applies only to torts, while § 1681t(b)(1)(F) applies only to state statutory regulation.").  This court has on a previous occasion invoked the statutory approach to reconcile the inconsistency between section 1681t(b)(1)(F) and section 1681h(e).  *E.g.*, *Carlson*, 259 F. Supp. 2d at 521.  In *Carlson*, "based upon the language of the sections themselves," the court explained:

Section 1681h(e) clearly applies to torts. The section specifically references "any action or proceeding in the nature of defamation, invasion or privacy, or negligence." . . . All claims in the (non-exclusive) list are torts. Section 1681t(b)(1)(F) gives every indication of dealing only with state statutory regulation. This is made yet more clear when you consider the two laws that are specifically excluded from § 1681t(b)(1)(F)'s coverage[, section 54A(a) of Chapter 93 of the Massachusetts Annotated Laws, and section 1785.25(a) of the California Civil Code]. . . . There is no indication that Section 1681t(b)(1)(F) was meant to completely preempt ALL state law claims including state common law claims.

*Id.* The court remains convinced that the statutory approach is the best of the three predominant approaches. There simply is no indication that section 1681t(b)(1)(F) was intended to repeal section 1681h(e) and completely preempt all state law claims, and the statute's plain language supports applying section 1681t(b)(1)(F) to state statutory law and section 1681h(e) to state common law torts. *Id.* Moreover, the statutory approach creates an unequivocal bright-line rule that will foster manageable judicial administration of these two inconsistent preemption provisions while giving meaning to both.

Given the Fifth Circuit's consistent recognition that section 1681h(e) does not preempt state common law causes of action against furnishers who act with malice, the text and legislative history of the FCRA and its 1996 amendments, and the practical implications of the various approaches, the statutory approach arguably provides the simplest and most logical method for reconciling sections 1681t(b)(1)(F)

and 1681h(e).  The court, therefore, adopts the statutory approach to resolve the case *sub judice*.

Under the statutory approach, section 1681t(b)(1)(F) preempts all causes of action against furnishers grounded in state statutory law, and section 1681h(e) preempts those tort claims arising under state common law -- neither preempts all state law causes of action.  Here, Meisel alleges that Bank committed the state common law torts of libel, slander, and defamation *with malice* -- claims which are expressly excepted from preemption under section 1681h(e) and, under the "statutory approach," are not encompassed by the preemption provision of section 1681t(b)(1)(F).  Accordingly, Bank has failed to carry its burden to show that Congress clearly intended for civil actions against furnishers of credit information to be exclusively litigated in federal court, the court lacks federal-question jurisdiction, and this case should be remanded to the state court from whence it came.[4]

---

[4]        Because the court refuses to interpret section 1681t(b)(1)(F) to completely preempt all state law claims against furnishers, section 1681h(e) cannot be the basis for the Bank's removal of this case because that provision provides a federal preemption defense to, but does not completely preempt, Meisel's state law claims.  See *Wells v. Shelter General Insurance Company*, 217 F. Supp. 2d 744, 749 (S.D. Miss. 2002) (citing *Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 63 (1987)) ("[T]he existence of . . . a federal preemption defense does not authorize removal.").  Conflict preemption is insufficient to create federal jurisdiction. *Quintana v. Lightner*, ___ F. Supp. 2d ___, No. 3:10-CV-0571-G, 2011 WL 976773, at *2 (N.D. Tex. Mar. 21, 2011) (Fish, J.).

## B.  Timeliness of Removal

Even if it is assumed *arguendo* that the FCRA completely preempts the

plaintiff's state law claims, the case would be remanded for untimely removal.  Title

28, Section 1446(b), which governs the procedure for removing civil cases, provides:

> The notice of removal of a civil action or proceeding shall
> be filed within thirty days after the receipt by the
> defendant, through service or otherwise, of a copy of the
> initial pleading setting forth the claim for relief upon which
> such action or proceeding is based, or within thirty days
> after the service of summons upon the defendant if such
> initial pleading has then been filed in court and is not
> required to be served on the defendant, whichever period is
> shorter.
>
> If the case stated by the initial pleading is not removable, a
> notice of removal may be filed within thirty days after
> receipt by the defendant, through service or otherwise, of a
> copy of an amended pleading, motion, order or other paper
> from which it may first be ascertained that the case is one
> which is or has become removable, except that a case may
> not be removed on the basis of jurisdiction conferred by
> section 1332 of this title more than 1 year after
> commencement of the action.

28 U.S.C. § 1446(b).  "The first paragraph applies only to civil actions in which the

case stated by the initial pleading is removable.  The second paragraph applies only to

civil actions in which the initial pleading states a case that is not removable." *New

York Life Insurance Company v. Deshotel*, 142 F.3d 873, 886 (5th Cir. 1998).

Bank contends that it "removed this case within 30 days of December 23,

2010 -- the date on which it received a 'paper from which it may first be ascertained

that the case is one which is or has become removable.'" Response at 13. The face of the plaintiff's amended petition, however, clearly sets forth libel, slander, and defamation causes of action against Bank in its capacity as a furnisher of information to a CRA.[5] Amended Petition ¶ 4.10. Thus, the thirty-day period for removal began to run on or about November 29, not December 23.

In his amended petition, Meisel specifically alleges that "US Bank, through Chexsystem's has repeatedly republished false and defamatory statements about the Plaintiff to other banks and financial institutions." Amended Petition ¶ 4.10. Bank admits that it "is a person who furnishes information to a credit reporting agency," Removal at 2 ¶ 5, and "ChexSystems is a consumer reporting agency, ChexSystems identifies itself as such, and courts have previously recognized ChexSystems as a consumer reporting agency." Response at 3 n.4. That discovery revealed "Meisel is not seeking damages from traditional allegations of defamation for repeating a defamatory statement to a third party. . ., [but] seek[s] to hold [Bank] responsible for allegedly reporting irregular activity by Meisel to a consumer reporting agency under the FCRA", Removal at 3 ¶ 6, is of no consequence. Even if Meisel's claims were in

---

[5]     Notably, the plaintiff's original petition also sets forth these same allegations, so Bank arguably had notice of this case's removability when it received a copy of the plaintiff's original petition. Original Petition ¶¶ 4.09-4.10, 7.01. Because Bank's removal was untimely from the date it received the plaintiff's amended petition, the court need not address whether the amended petition substantially altered the nature of this dispute so as to implicate the revival exception to the thirty-day requirement of section 1446(b). See, *e.g.*, *Johnson v. Heublein Inc.*, 227 F.3d 236, 241 (5th Cir. 2000).

- 21 -

fact predicated on Bank's conduct in both furnishing defamatory information to ChexSystems and "repeating a defamatory statement to a third party," the allegations against Bank as a furnisher of credit information to ChexSystem alone -- which appear on the face of the amended petition -- would have started the removal clock if those claims were completely preempted by the FCRA.

To preserve its right to remove, Bank should have removed this case within 30 days of receiving Meisel's amended petition. Bank's argument that it did not have notice of the full scope of Meisel's claims is unpersuasive, and the defect in removal constituted a wavier of its right to remove. See *Buchner v. Federal Deposit Insurance Corporation*, 981 F.2d 816, 818 (5th Cir. 1993). Consequently, even if the court assumed for the sake of argument that Meisel's claims are completely preempted by the FCRA, remand would still be appropriate because Bank waived its right to remove by not doing so within 30 days of its receipt of Meisel's amended petition.

Because the court finds that Meisel's state common law tort claims are not completely preempted by the FCRA, and even if they were Bank's removal was untimely, the court elects not to address Meisel's contention that Bank waived its right to remove by filing a counterclaim in state court.

## C. Attorney's Fees

Meisel seeks attorney's fees pursuant to 28 U.S.C. § 1447(c). "Absent unusual circumstances, attorney's fees should not be awarded [under § 1447(c)] when the

removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corporation*, 546 U.S. 132, 136 (2005). As the Fifth Circuit has made clear, "The statute does not embody either a strong preference for or a strong preference against fee awards." *Admiral Insurance Company v. Abshire*, 574 F.3d 267, 280 (5th Cir.), *cert. denied*, *Louisiana v. Abshire*, __ U.S. __, 130 S.Ct. 756 (2009). Given the uncertainty regarding the relationship between the FCRA's two preemption provisions, the court cannot say that Bank's removal of this case was objectively unreasonable. Accordingly, Meisel's motion for attorney's fees is denied.

### III. CONCLUSION

For the above state reasons, the plaintiff's motion to remand the case to the state court from which it was previously removed is **GRANTED**, and the plaintiff's motion for attorney's fees is **DENIED**. This case is **REMANDED** to the **192nd Judicial District Court of Dallas County, Texas**. The clerk shall mail a certified copy of this memorandum opinion and order to the district clerk of Dallas County, Texas. 28 U.S.C. § 1447(c).

**SO ORDERED**.

June 14, 2011.

*C. Joe Fish*
_____
**A. JOE FISH**
**Senior United States District Judge**